UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SERAFIN FUENTES, ELENA FUENTES, and ANTONIO CERROS, <br>     Plaintiffs, <br><br> v. <br><br> CHARLES R. MILLER, GREAT AMERICAN LINES, INC., CON-WAY FREIGHT, INC., JOSEPH WELLS, and P.I. & I. MOTOR EXPRESS, <br>     Defendants. | Cause No.: 2:12-CV-454-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendants Joseph Wells and P.I. & I. Motor Express's Motion for Summary Judgment [DE 87], filed on January 30, 2015, and Defendant Con-Way Freight, Inc.'s Motion for Summary Judgment [DE 92], filed on February 4, 2015. Defendants Great American Lines, Inc. and Charles Miller (collectively "Miller") filed responses to both motions on March 2, 2015, and March 9, 2015, respectively. Plaintiffs joined both of Miller's responses. On March 16, 2015, Defendants Wells and P. I. & I. Motor Express (collectively, "Wells") filed a reply. Defendant Con-Way Freight, Inc. (Con-Way) did not file a reply in support of its motion, and the time to do so has passed.

This is a personal injury case arising from a vehicle accident that occurred on January 13, 2011, when a semi-truck driven by Defendant Miller (and owned by Defendant Great American Lines, Inc.) rear-ended a 1996 GMC pickup truck in which Plaintiffs Serafin Fuentes and Antonio Cerros were riding. Plaintiffs allege that Wells and Con-Way bear some of the blame for the accident. Discovery has come to a close, and Wells and Con-Way now seek summary judgment in their favor on the basis that they were not the proximate cause of the accident, but that the

negligence of Miller was a superceding and intervening cause.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).[1]

### I. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

---

[1] The driver of the Con-Way truck has never been identified, and he appears on the docket as a "John Doe" defendant. The Seventh Circuit Court of Appeals has explained that including Doe defendants is "pointless" in federal court, since it doesn't open the door for relation back under Federal Rule of Civil Procedure 15 or help the plaintiff in any other way. *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citing Fed. R. Civ. P. 15; *Delgado–Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996)). Technically, however, the John Doe remains on the docket and obviously cannot consent to magistrate judge jurisdiction. This does not affect the consent jurisdiction of the undersigned Magistrate Judge over the other parties, however, as Defendant John Doe was severed from this case on April 11, 2013.

interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

3

Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## II. Wells's Motion for Summary Judgment

As an initial matter, Wells objects to the format of Miller's response, contending that it fails to comply with Northern District of Indiana Local Rule 56-1(b)(2) since it does not contain a section labeled "Statement of Genuine Disputes" or identify the material facts that Miller contends "are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56(b)(2). Wells thus asks that the Court accept as true all properly supported facts set forth in the Statement of Material Facts in his brief.

A Statement of Genuine Disputes points the Court to those factual issues that the case hinges on. Here, as Wells points out, the response does identify some facts that are in dispute, but does not clarify which of these facts Miller believes create a genuine issue of material fact that must be

4

decided at trial.[2] On summary judgment, the Court is faced with "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial . . . . The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). It thus is within this Court's discretion to insist on strict compliance with the local rules. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)); *Waldridge*, 24 F.3d at 922.

The Court declines to do so here. *Cf. Stevo*, 662 F.3d at 887 ("We have not endorsed the very different proposition that litigants are entitled to expect strict enforcement by district judges."). "Local rules, like the Federal Rules of Civil Procedure that they supplement, should be construed to provide for the 'just, speedy, and inexpensive determination of every action' on its merits." *Id.* (quoting Fed. R. Civ. P. 1). Miller's response makes clear which facts are in dispute and supports these disputes with citations to the record. The legal dispute is straightforward, and the Court can readily discern the significance of the facts to the underlying legal issues.

### A. Material Facts

On January 13, 2011, Plaintiffs Serafin Fuentes and Antonio Cerros were traveling north on Cline Avenue in a 1996 GMC pickup truck. Fuentes was driving, and Cerros was the only passenger. The roads were a little wet.

The accident occurred at about 10:15 a.m. on Cline Avenue near the 5th Avenue on- and off-ramps in Lake County, Indiana. There are, at that part of the road, two lanes headed north and two

---

[2] Miller's response contains a section titled "Response to Statement of Undisputed Material Facts," broken into forty paragraphs where Miller admits and denies various facts relied upon by Wells. Miller then provides a section titled "Additional Statement of Relevant Facts," comprised of an additional thirty-nine paragraphs, restating many of the undisputed facts relied upon by Wells.

lanes headed south with a concrete median in between.

Traffic was moving normally. Fuentes was in the left lane, driving at a speed of about fifty to fifty-five miles per hour. (The speed limit was fifty-five miles per hour.) Behind Fuentes in the left lane was a Great American Lines semi-truck, driven by Defendant Charles R. Miller. Ahead of Fuentes was a black vehicle. The following distance between Fuentes and the black vehicle was normal—a few car lengths. Wells was driving his semi-truck in the right lane at a speed of fifty-three miles per hour. The black vehicle was driving in the left lane alongside Wells so that the front of the black vehicle was a little ahead of the rear axle of the trailer Wells was hauling. The Con-Way semi-truck, hauling three trailers, was traveling on the on-ramp, preparing to merge onto Cline Avenue.

Wells initially thought that he would beat the Con-Way truck to the "gore point"—that is, the place where two roadways merge into one—of the on-ramp from westbound 5th Avenue. Wells nevertheless checked his left side to see if he could change lanes, but could not do so at that time because the black vehicle was beside him.

A few moments later, as he was nearing the gore point, Wells saw the Con-Way truck approaching on his right side; the driver was talking on a cell phone. The two semis were traveling at close to the same speed, and Wells realized at this point that they were on a collision course. To avoid a wreck, Wells applied his brakes hard and steered his semi-truck to the left side of his lane. Seeing the dangerous situation, non-party Robert Satanek, who was driving in the right lane behind the two semis, applied his brakes and pulled onto the shoulder. The Con-Way truck continued accelerating, faster than normal, and narrowly missed Wells, passing him on the shoulder. As Wells braked, his tires gave off smoke, and the trailer he was hauling began to come-around or jackknife,

sliding about half-way into the left lane. Though Wells was worried that he might hit the black vehicle, his trailer didn't come into contact with anything. The black vehicle braked, though it did not brake hard. Cerros, who was in the passenger seat of the GMC, called out to warn Fuentes, who immediately put his foot on the brake to slow down; he was breaking firmly, but not at full force, eventually coming to a halt.

Moments later, Miller rear-ended Plaintiff. The impact caused Fuentes's head to break the rear window of his pickup truck. There were no horns, screeching tires, or sounds of braking prior to impact. But after he was struck, Fuentes pressed the brake pedal as hard as he could. As he was shoved forward he heard a squealing sound that might have come from his own car or, perhaps, from Miller's truck. The accident seriously injured both Fuentes and Cerros and totaled Fuentes's pickup truck. No other collisions occurred. Moments after the accident, Wells told a police officer the Con-Way driver had "created an incident back here." DE 108-5 at 9.

**B. Analysis**

To prevail on a claim for negligence under Indiana law, a plaintiff must prove that the defendant owed the plaintiff a duty, that he breached the duty, and that the breach was the proximate cause of the injury. *Adkins v. Meijer Stores LP*, No. 1:05CV1422 JDTWTL, 2006 WL 2916834, at *4 (S.D. Ind. Oct. 10, 2006) *aff'd sub nom. Adkins v. Meijer Stores LP*, 256 F. App'x 845 (7th Cir. 2007).[3] Wells contends that, while the Con-Way driver's merging and his response preceded the accident, the evidence before the Court is insufficient to show that his actions were the proximate cause of Plaintiff's injuries.

---

[3] Wells contends that Indiana's substantive law governs the outcome of this case, and none of the other parties have objected. Federal "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

"Whether or not proximate cause exists is primarily a question of foreseeability." *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 108 (Ind. 2002). That is, whether the injury was "a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1220 (Ind. 2000) (internal quotation marks omitted)). Just being negligent isn't enough, even if the negligence set in motion a chain of events that led to the injury; the plaintiff needs to prove forseeability. *Id.*

"This is the case if there is only one negligent act or omission[,] and it is equally true in the case of a negligent act or omission followed by a superseding act or omission." *Id.* However, an injury may nevertheless have more than one proximate cause. *Hellums v. Raber*, 853 N.E.2d 143, 146 (Ind. Ct. App. 2006) (citing *City of Indianapolis Hous. Auth. v. Pippin,* 726 N.E.2d 341, 346 (Ind. Ct. App. 2000)). Whether something is foreseeable is not judged based on the opinions of those involved, but on the objective standard of due care—that is, what "might reasonably have been anticipated in the ordinary experience of people." *McKinney v. Pub. Serv. Co. of Indiana*, 597 N.E.2d 1001, 1006 (Ind. Ct. App. 1992) (internal citations omitted). Summary judgment is rarely appropriate in negligence cases. *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 942 (S.D. Ind. 2013) (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). And questions of forseeability usually belong to the jury. *Johnson*, 762 N.E.2d at 107. But if the undisputed facts before the court are insufficient to prove at least one of the necessary elements of the plaintiff's claim, summary judgment should be granted in favor of the defendant. *Id.*

Wells contends that the evidence in the record establishes that the accident was not a foreseeable consequence of his actions and that Miller's negligence was a superceding or intervening cause. He analogizes this case to a number of Indiana cases where there was an initial

accident followed by a second accident that was held to be—as a matter of law—an unforeseeable intervening cause of the injury, which cut off the liability of the person who caused the first accident. Thus, in *Slinkard v. Babb*, Slinkard was driving across a bridge when he was rear-ended by the Babb vehicle. 125 Ind. App. 76, 81 (1953). Less than a minute later, as Slinkard was standing between the two vehicles, inspecting the damage, a third car approached and slammed into the back of Babb's car. Slinkard was caught between his car and Babb's and suffered severe injuries. *Id.*

The trial court entered a directed verdict in favor of Babb, which the Indiana Court of Appeals affirmed, explaining that it was not "reasonably foreseeable that Babb's conduct would result in the chain of events which caused appellant's injury." *Id.* at 880. Rather, "Babb's acts did no more than furnish a condition by which the subsequent injury to the appellant was made possible, and under the rule of proximate cause, both in [Indiana] and in Kentucky, Babb's acts cannot be held to be the proximate cause of the injuries to the appellant." *Id.* at 880.[4]

The Indiana Court of Appeals confronted a similar situation some fifteen years later in *Schroer v. Edward J. Funk & Sons, Inc.*, 233 N.E.2d 680, 681 (1968). In that case, there was an initial accident in which a woman was rear-ended by a truck driven by John J. Zimmerman and owned by Edward J. Funk & Sons, Inc. *Id.* The police arrived and took "proper precautions to prevent subsequent accidents by setting out warning flares." *Id.* The officers then stopped a truck which had been headed south, toward the scene of the accident. As this truck was sitting, a car collided with it, injuring one of the passengers. *Id.* The trial court granted a directed verdict in favor of Zimmerman and Edward J. Funk & Sons, Inc., and the court of appeals affirmed, holding that any negligence by those two parties "only created a condition by which the subsequent injury . . . was

---

[4] The *Slinkard* court was applying Kentucky law. *Slinkard v. Babb*, 112 N.E.2d 876, 879 (1953).

9

made possible and was in no respect the proximate cause of the accident in question . . . . [T]he appellees could not have reasonably foreseen the occurrence of the subsequent accident." *Id.* at 684.

Wells also looks to *Havert v. Caldwell*, 452 N.E.2d 154, 159 (Ind. 1983). That case involved four cars. The first two were parked on the side of a street. A third car rear-ended the second car. The driver of the first car and the driver and passenger of the second car then walked in between the second and third car to survey the damage. A drunk driver slammed into the third car, injuring the three people who were inspecting the damage from the original collision. The trial court granted summary judgment in favor of the driver of the third car, and the Indiana Court of Appeals affirmed, applying *Slinkard*. 112 N.E. 2d at 880. The *Havert* court explained that it wasn't foreseeable that a drunk driver "would come driving through the same lane of traffic in which parking was permitted and collide with [a] vehicle already situated in that lane in the same manner as any legally parked car would have been." *Id.* at 159.

These cases are distinguishable. Each involved some new person crashing into a static situation where the first and second accidents were separated by significant portions of time. Even in *Slinkard*, where there was less than a minute between the accidents, Slinkhard had enough time to get out of the car, pick up the broken bumper, put the broken bumper back in the car, and then go back to inspect the rest of the damage. *Slinkard*, 125 Ind. App. at 81. Here, Fuentes had only just stopped at the time of the accident.

Moreover, the intervening causes in each of these cases have a certain quality that would produce a news headline. For example: "Drunk Driver Slams into Cars Stopped in Curbside Parking Lane" or "Driver Plows Into Truck Stopped by Police at Scene of Earlier Accident." Newspaper headlines, especially those describing events involving otherwise-unknown people, often work by

promising the reader something surprising, something the ordinary person would not expect. The intervening cause here, by contrast, is more mundane.

Wells points out that neither the black car nor the GMC slammed on their brakes, contending that cars on the highway often slow down in this way. But a reasonable fact-finder could conclude that the situation here was more dangerous than what is found in normal highway traffic. Evidence supporting this includes how Wells's tires gave off smoke and his trailer swerved far into the left lane as well as how Plaintiff Cerros called out to Fuentes to look out and how Robert Satanek, who was driving in the right lane behind Wells and Con-Way, applied his brakes and pulled onto the shoulder when he saw what was happening.

A reasonable fact-finder looking at this evidence could conclude that it was foreseeable that the near-miss between Wells and Con-Way could have caused an accident. Indeed, moments after the accident, Wells told a police officer that the Con-Way driver had "created an incident back here." DE 108-5 at 9. There is a genuine issue of material fact, and the Court therefore denies Wells's Motion for Summary Judgment.

### III. Con-Way's Motion for Summary Judgment

The material facts presented in Con-Way's Motion do not differ significantly from those in Wells's. And its motion largely reiterates the arguments just discussed. The Court accordingly denies Con-Way's Motion for Summary Judgment for the same reason it denies Wells's.

### IV. Conclusion

For these reasons, the Court **DENIES** Defendants Joseph Wells and P.I. & I. Motor Express's Motion for Summary Judgment [DE 87] and **DENIES** Defendant Con-Way Freight, Inc.'s Motion for Summary Judgment [DE 92].

SO ORDERED this 11th day of June, 2015.

                                             s/ Paul R. Cherry
                                          MAGISTRATE JUDGE PAUL R. CHERRY
                                          UNITED STATES MAGISTRATE JUDGE