UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SERAFIN FUENTES, ELENA FUENTES, )
and ANTONIO CERROS, )
      Plaintiffs, )
)
    v. ) Cause No.: 2:12-CV-454-PRC
)
CHARLES R. MILLER, GREAT )
AMERICAN LINES, INC., CON-WAY )
FREIGHT, INC., JOSEPH WELLS, )
and P.I. & I. MOTOR EXPRESS, )
      Defendants. )

**OPINION AND ORDER**

This matter is before the Court on two Motions to Bar Expert Testimony [DEs 95 and 96], filed by Defendant Con-Way Freight, Inc. on February 10, 2015. These seek to bar the testimony of two experts in this case: James Casassa and Anita Kerezman, respectively. Defendants Great American Lines, Inc. and Charles R. Miller (collectively "Miller") filed responses on February 20, 2015. No replies have been filed, and the time to do so has passed.

Also before the Court are three Motions to Limit Expert Testimony [DEs 97, 98, and 99], filed by Miller on February 10, 2015. These Motions seek to limit the testimony of three experts in this case: Anita Kerezman, Mike Dilich, and James Casassa, respectively. No response was filed with regard to Kerezman or Casassa, and the time to do so has passed. Defendants Joseph Wells and P. I. & I Motor Express (collectively, Wells) filed a response to the motion to limit Dilich's testimony on February 24, 2015, and Miller filed a reply to that response on March 5, 2015.

## I. Background

This is a personal injury case arising from a vehicle collision that occurred on January 13, 2011, when a semi-truck driven by Defendant Miller (and owned by Defendant Great American Lines, Inc.) rear-ended a pickup truck in which Plaintiffs Serafin Fuentes and Antonio Cerros were riding. The accident occurred around 10:15 a.m. on Cline Avenue near the 5th Avenue on- and off-ramps in Lake County, Indiana. There are, at that part of the road, two lanes headed north and two lanes headed south with a concrete median in between.

At the time of the accident, Fuentes was in the left lane, followed by a Great American Lines semi-truck, driven by Defendant Charles R. Miller. Ahead of Fuentes was a black vehicle. Defendant Wells was driving his semi-truck in the right lane ahead of Fuentes. The black vehicle was driving in the left lane alongside Wells so that the front of the black vehicle was a little ahead of the rear axle of the trailer Wells was hauling. The Con-Way semi-truck was traveling on the on-ramp, preparing to merge onto Cline Avenue.

Wells testified at his deposition that he initially thought that he would beat the Con-Way truck to the "gore point"—that is, the place where two roadways merge into one—of the on-ramp. But as he was nearing the gore point, Wells saw the Con-Way truck approaching on his right. The two semis were traveling at close to the same speed, and it appeared that they were on a collision course. To avoid a wreck, Wells applied his brakes hard and steered his semi-truck to the left side of his lane while the Con-Way truck passed Wells on the right shoulder. As Wells braked, his tires gave off smoke and the trailer he was hauling began to come-around or jackknife to the left. Fortunately, Wells's trailer didn't come into contact with anything.

The black vehicle braked, though it did not brake hard. Fuentes then began braking too. A

few seconds later, Miller rear-ended him. The impact caused Fuentes's head to break the rear window of his pickup truck. After he was struck, Fuentes pressed the brake pedal as hard as he could. According to the Amended Complaint, the accident seriously injured both Fuentes and Cerros and totaled Fuentes's pickup truck. No other collisions occurred.

## II. Admissibility Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, "[t]he district court is a 'gatekeeper' who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741-52 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006)).

Courts use a three-step analysis to determine the admissibility of expert testimony: (1) whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education," (2) whether the subject of an expert's testimony is "scientifically reliable," and (3) whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904. "It is not the trial court's role to decide whether an expert's

opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 159 (1999) (Scalia, J., concurring)). This standard applies to all types of expert testimony, "whether it relates to areas of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise." *Id.* (citing *Kumho*, 526 U.S. at 141).

### III. Analysis

The motions before the Court overlap somewhat, and, rather than consider each motion in turn, the Court approaches the analysis expert by expert.

### A. James Casassa

James Casassa works in the field of forensic engineering, including technical investigation and reconstruction of vehicle collisions, as well as mechanical failure analysis, automotive safety, and crash-worthiness. Plaintiffs hired Casassa to perform an accident reconstruction and to determine the severity of the collision between Miller and Fuentes.

According to the moving parties, Casassa will offer the following opinions at trial:

1. Miller was following Fuentes too closely and had insufficient perception-reaction time and stopping distance to avoid rear-ending Fuentes's pickup truck;

2. Miller attempted to slow his semi, but nevertheless struck the rear of the Fuentes pickup at a speed of about 25 to 30 mph, which resulted in a speed change to the Fuentes vehicle (which was traveling at about 5 mph) of about 20 to 25 mph;

3. The collision caused Fuentes's head to move rearward with sufficient force to break the rear window directly behind the driver's seat;

4. The speed change of about 20 to 25 mph was enough to cause

4

injury.

Con-Way argues that these opinions are based on improper assumptions and will not aid the jury. The only response comes from co-defendant Miller, and his disagreement is limited to whether Casassa should be allowed to testify about the change of speed upon impact.

Casassa's report synthesizes witness testimony and concludes that the initial speed of the vehicles was about fifty miles per hour and that the time between when Fuentes started braking and when Miller collided with him was about three to four seconds. He writes, without citation to any measurements or specifications, that "the time required for the pickup truck to slow from 50 mph to 5 mph" is "about three seconds." DE 102-2 at 7.

Casassa concludes that Miller was following about fifty feet behind Fuentes before Fuentes began braking. Casassa represents that he performed a "time-distance" analysis using the data gleaned from witness testimony, concluding that Miller was traveling somewhere between twenty-five and thirty miles per hour at the time he struck Fuentes and that, given the weight difference (which is not quantified), the speed change of the pickup upon impact was about twenty to twenty-five miles per hour. He also notes that the pickup truck frame was bent significantly behind the rear axle and also just behind the cab, consistent with his speed change estimate.

The report, as well as the deposition testimony cited by the parties, does not include much in the way of mathematical or engineering analysis. There is no explanation of how much force it would take to bend a pickup frame or how fast a semi-truck of a given weight would have to be traveling in order to deliver that force. And there is no discussion of how long it takes for a semi-truck of a given weight to slow down. The report notes that Fuentes's truck was pushed about three to four car-lengths before it and Miller's semi came to a stop and that Fuentes depressed the brake

5

moments after being struck, but it does not provide any calculation regarding why the vehicles' weights (whatever they might be) and braking strengths (whatever they might be) would suggest an impact speed of twenty-five to thirty miles per hour.

Perhaps Casassa performed calculations in reaching his conclusions, but neither his report nor the deposition testimony referred to in the briefs include these sorts of analyses. The Court is unable to discern whether Casassa used a reliable methodology because he never discloses what his methodology was. *Cf. Garlach v. Senters*, No. 3:06CV502CAN, 2007 WL 1725464, at *3 (N.D. Ind. June 11, 2007) (examining a similar situation and concluding that "[the expert] used . . . mathematical formulas to reach some of his conclusions [and he] has shown that his theory is subject to, indeed the product of, extensive testing."). Casassa's opinion has not provided relevant information such as the braking rates, weights, or other important physical characteristics of the vehicles nor has he explained how these related to his conclusions. His say-so alone is not enough, and the testimony must therefore be excluded. *See Kumho*, 526 U.S. at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997) (internal quotation marks))).

His other opinions must also be excluded. As with the issue of closing speed just discussed, Casassa does not provide much explanation regarding the methods he used to calculate following distance. His expert testimony on this question would therefore not be helpful.

As for the force required in order to break the rear window, Con-Way represents there is other evidence that will be admitted showing that this type of rear-window could withstand impact from a body part traveling up to fifteen miles per hour and that there is evidence that will be

admitted that Fuentes's head in fact broke the rear window. The conclusion that the closing speed between Fuentes's head and the window was at least fifteen miles per hour is therefore a matter of basic logic and there is no need for expert testimony on this issue.

Regarding whether an abrupt acceleration of around twenty to twenty-five mph is sufficient to cause injuries, this too is a matter of common sense. Casassa is not a medical doctor, and his testimony does not offer any specific biomechanical or other scientific insight. It must therefore also be excluded.

Finally, Miller seeks to exclude a draft computer animation video that purports to reconstruct the accident. This request is well taken as the video is incomplete and is based on opinions that have been excluded.

For these reasons, the testimony of James Casassa must be excluded in its entirety. That Plaintiffs did not object to the motions to bar this testimony further underscores its flawed nature.

### B. Anita Kerezman

Anita Kerezman is a former semi-truck driver and commercial vehicle operation and safety specialist. Plaintiffs have engaged her to testify as an expert in the areas of commercial motor vehicle operation and safety, regulatory compliance and standards of care, and accepted practices in the trucking industry. Her report and subsequent deposition testimony include her reconstruction of the accident, her opinions about which actions were unsafe, as well as opinions about training and record retention. In particular, she opines that

    1.    The Con-Way driver failed to yield the right of way—once he knew or should have known that Wells was not going to allow him to access the highway, he could have backed off to avoid the gore point;

    2.    The Con-Way truck and Wells were on a collision course for

                several seconds before Wells finally hit the brakes to avoid hitting the Con-Way trailer;

3.     The Con-Way driver failed to reduce his speed on the on-ramp and wait until he could merge onto Cline Avenue safely;

4.     Wells should have known that the right of way is given and not taken and should have yielded it to Con-Way well before the hazard became an emergency;

5.     The Con-Way driver was reportedly using a cell phone in violation of Con-Way company policy and industry standards.

Miller asks the Court to bar her from testifying at trial about the meaning of common driving terms such as "following too closely," "failure to yield," or "failure to keep a proper lookout" as well as legal conclusions about the Federal Motor Safety Regulations or the Indiana Motor Vehicle Code. He also contends that she should not be permitted to testify to training. However, he asks that she be permitted to testify about causation, specifically the game of "chicken" involving Wells and the Con-Way driver, as well as whether any of the drivers were negligent or failed to take reasonable care.

Con-Way, in contrast, contends that Kerezman's testimony must be entirely excluded. It argues that she offers opinions that amount to an accident reconstruction, but doesn't have the appropriate credentials and didn't do the necessary investigation.

Con-Way's objection with regard to accident reconstruction is well taken. Kerezman admitted that she can't provide an explanation based upon scientific examination of the accident scene, the vehicles involved, or other evidence. Thus, insofar as she opined about *how* the accident happened, her testimony must be excluded, for, as Con-Way points out, she is not an expert on

accident reconstruction nor did she employ reliable reconstruction methods in crafting her opinion.[1]

Her testimony regarding retention policies and driver training (or lack thereof) must also be excluded as Plaintiffs do not allege that Defendants violated a duty to train or a duty to retain records nor do these opinions appear germane to Plaintiffs' other claims. No party objects to the exclusion of these opinions.

Insofar as she can offer testimony on the best-practices of the trucking industry as well as what it takes to safely operate a semi truck, however, she should be allowed to testify. As Miller points out, many of her opinions are based on experience, not on science. Con-Way attacks this experience as being no greater than the average trucker, but this contention is ill-founded. She has nearly three decades of trucking experience and is certified by the North American Transportation Management Institute as a Director of Safety. This credential may not be the hardest to obtain, but it seems to have genuine value as her qualifications were approved by a university, which based its decision in part on her significant experience. Moreover, she has testified before multiple courts, has given many presentations on the subject of safe operation of commercial vehicles, and has even written a book on trucking safety. Her methodology also appears to meet the reliability requirement as it is based on her own extensive experience, training, and knowledge of how to safely operate commercial vehicles such as the semi trucks in this case.

She will therefore be allowed to testify about trucking safety. However, whenever it is

---

[1] This renders moot Con-Way's objection that her version of what happened was improperly based on an evaluation of the testimony of the other witnesses. However, the Court notes that "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses." *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999).

necessary to avoid venturing into contested questions of fact based on accident reconstruction, she must be examined using hypothetical questions so that she does not put forward unfounded opinions about how she thinks the accident occurred.

As for the content of her testimony, it may embrace ultimate issues. Fed. R. Evid. 704. But all "testimony as to *legal conclusions* that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (emphasis added). "The line between a permissible and impermissible opinion under Rule 704 is sometimes difficult to draw [as] there is a substantial 'grey area' between 'ultimate issues' and 'legal conclusions.'" *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 (N.D. Ill. 2006). That said, there is no doubt that Kerezman may testify about relevant professional standards or whether a defendant's conduct conformed to those standards. *Id.* But she may not give naked legal conclusions (e.g., "the driver was negligent") or testify whether certain conduct violated a law or regulation. *Id.*; *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *4 (N.D. Ill. May 26, 2005) ("[A]n expert may not offer opinion testimony as to whether a defendant violated a statute or regulation, at least where that statute or regulation is at issue in the case." (citing *Good Shepard*, 323 F.3d at 564)).

Finally, she may not testify as to concepts that are within the experience of the average juror. *See Roback v. V.I.P. Transp. Inc.*, 90 F.3d 1207, 1215 (7th Cir. 1996); *Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 515 (7th Cir. 2007). Thus, though she may testify about safety standards peculiar to the trucking industry, but may not, for example, testify about who had the right of way during merging as the rules about merging apply to all vehicles: to a semi truck as much as to a Mini Cooper. Exactly where this line should be drawn will better sorted out at trial through live objections

as "expert testimony can still be 'helpful and relevant' (and thus admissible) even if it 'to a greater or lesser degree, cover[s] matters that are within the average juror's comprehension." *Delarosa v. Speedway LLC*, No. 2:11-CV-476-PRC, 2013 WL 4736173, at *2 (N.D. Ind. Sept. 3, 2013) (quoting *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996).

## C. Mike Dilich

Wells has hired Mike Dilich, an engineer specializing in accident reconstruction, to testify in this case. Miller concedes that he is qualified and that many of his opinions are admissible. However, he asks that Dilich be barred from testifying to matters that are commonly understood by the average juror, opining about legal issues, and giving a bottom-line opinion about responsibility. Specifically, he asks that Dilich be barred from testifying about whether Con-Way or Wells had the right of way or whether Miller was following too closely or was inattentive. He also objects to Dilich's use of the word "condition," as distinguished from "cause."

As mentioned above, who has the right of way is not an issue requiring expert testimony as no expertise is needed to educate the jury on that point. It may well be true, as conflicting expert opinions and witness testimony suggest, that many people are unaware of the rules governing merging. This doesn't make an expert the proper conduit by which to inform the jury, however. The jury will be instructed on the applicable law and the parties are free to ask the Court to take judicial notice of the relevant rules of the road. Likewise testimony along the lines of "safe merging requires the cooperation of both the merging driver and the others on the highway" will be excluded as it is within the knowledge of the average juror and would not be helpful. Similarly, the concept of attentiveness is within the ken of the average juror and testimony on this subject will be permitted only insofar as there is some specific insight into attentiveness that would go beyond the knowledge

of an average juror (e.g., an attentive driver's reaction time is typically less than X) or if there is a standard for attentiveness that applies to the trucking industry but not to an ordinary motorist.

As for following distances, what counts as too close is different for heavy commercial vehicles like semi-trucks than it is for cars or pickup trucks. Testimony about safe following distances for semi-trucks will therefore be useful to the jury and is thus permitted.

As for legal terminology, Dilich's report opines that "[w]hether or not Con-Way and/or Wells' merging behavior was reasonable, it was merely a condition that the other drivers responded to normally and safely until Miller rear-ended Fuentes." DE 101-2 at 6. Miller objects that testimony containing the word "condition" crosses the line into impermissible testimony about what the law requires. As with legal terms such as "foreseeability," " condition" is a legal term that has an ordinary meaning outside of the law. The Court has not yet decided on jury instructions relating to causation. But in the interests of keeping expert testimony from veering into legal opinion, which might confuse the jury, it makes sense to require Dilich to explain himself using other words. The hurdle for Wells is minor as Dilich remains free to testify to the ultimate issues in this case. The only limit applies simply to this particular word.

Finally, Miller contends that Dilich will give a bottom-line opinion, without support. The objection is not well taken. While the final paragraph of Dilich's report *does* provide a bottom line conclusion that "Miller's inattentiveness and/or following too close behind Fuentes was solely responsible for this accident," this conclusion is offered after Dilich's explanation of deceleration rates and reaction times. Unlike Casassa's opinions, which did not provide sufficient explanation, this conclusion rests on Dilich's scientific explanation, which is built on the evidence before the Court. Of course, the conclusion's reference to inattentiveness must be excluded consistent with the

parameters explained above.

## IV. Conclusion

For these reasons the Court

1. **GRANTS** Con-Way Freight, Inc.'s Motion to Strike the Opinions of James Casassa [DE 95] and **EXCLUDES** Casassa's expert testimony in its entirety;

2. **GRANTS in part and DENIES in part** Miller's motion to Limit the Testimony of James Casassa [DE 99]; the motion is granted insofar as it seeks to exclude Casassa's testimony and denied in all other respects;

3. Consistent with the limitations explained above, **GRANTS in part and DENIES in part** Con-Way Freight, Inc's Motion to Strike the Opinions of Anita Kerezman [DE 96];

4. Consistent with the limitations explained above, **GRANTS in part and DENIES in part** Miller's Motion to Limit the Testimony of Anita Kerezman [DE 97];

5. Consistent with the limitations explained above, **GRANTS in part and DENIES in part** Miller's Motion to Limit the Testimony of Mike Dilich [DE 98].

SO ORDERED this 26th day of June, 2015.

                                                  s/ Paul R. Cherry
                                                  MAGISTRATE JUDGE PAUL R. CHERRY
                                                  UNITED STATES MAGISTRATE JUDGE